**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Maria Luisa Iglesias De Castro,
Maria Irene Castro Iglesias,
Maria de la Concepcion Castro Iglesias,
and Maria Luisa Castro Iglesias,

Civil No. 18-1449 (DWF/ECW)

Plaintiffs,

**MEMORANDUM
OPINION AND ORDER**

v.

Maria Regina Castro, and
Pedro Jose Caraballo,

Defendants.

---

Tiffany A. Blofield, Esq., and Carl Richard Hansen, Esq., Winthrop & Weinstine, counsel for Plaintiffs.

Dustin Collen Jones, Esq., and Ken D. Schueler, Esq., Dunlap & Seeger, P.A., counsel for Defendants.

---

**INTRODUCTION**

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 8(a)(2), alternatively, for dismissal of counts I, II, and III under Fed. R. Civ. P. 12(b)(6), or, in the alternative, for judgment on the pleadings of all counts under Fed. R. Civ. P. 12(c). (Doc. No. 9.) Plaintiffs allege civil theft (Counts I and II), conversion (Count III), and unjust enrichment (Count IV) to recover monies allegedly stolen from them by family members. (Doc. No. 1 ("Compl.") ¶¶ 64-80.) For the reasons set forth below, the Court denies Defendants' motion.

**BACKGROUND**

Plaintiff Maria Luisa Iglesias De Castro ("Maria Iglesias") is the mother of Plaintiffs Maria Irene Castro Iglesias ("Maria Irene"), Maria de la Concepcion Castro ("Maria de la Concepcion"), and Maria Luisa Castro Iglesias ("Maria Luisa") (collectively, "Plaintiffs"). (Compl. ¶ 13.) The Plaintiffs currently reside in Venezuela. (*Id.* ¶¶ 4-7.)

Maria Iglesias is the widow of Emilio Castro Sanjurjo ("Emilio"). (*Id.* ¶ 13.) During Emilio's lifetime, he operated a business partnership ("Partnership") in Venezuela with his brother, Vicente Castro Sanjurjo ("Vicente"). (*Id.* ¶ 15.) The Partnership ran several construction companies and co-owned real estate in Venezuela and Spain. (*Id.* ¶ 16.) The brothers jointly owned all partnership assets, divided business profits evenly, and maintained a partnership bank account in both of their names.[1] (*Id.* ¶¶ 17-18.) Emilio's share of the Partnership's profits served as Plaintiffs' sole source of financial support. (*Id.* ¶ 19.) Plaintiffs allege that in the event of Emilio's death, his share of Partnership assets and ongoing profits would go to Maria Iglesias to ensure her financial well-being. (*Id.* ¶ 20.)

Emilio died on July 27, 1991 with Plaintiffs as his heirs. (*Id.* ¶¶ 21-22.) Plaintiffs allege that at Emilio's deathbed, Vicente vowed to care and provide for Maria Iglesias in Emilio's absence. (*Id.* ¶ 23.) To this end, Plaintiffs executed a power of attorney to grant

---

[1] Emilio and Vicente also shared a home. (Compl. ¶¶ 26-28.) Maria Iglesias continues to live on the second floor of the home; Vicente and his wife live on the first floor. (*Id.* ¶ 30.)

Vicente the authority to administer Emilio's estate and Partnership businesses.[2] (*Id.* ¶ 24). Vicente continued to manage and operate the Partnership and provided Maria Iglesias with financial support that was purportedly drawn from her share of its profits. (*Id.* ¶ 33.) This support routinely included money sufficient to cover: (1) living expenses; (2) health insurance; and (3) a small weekly allowance for food and for medical expenses not covered by insurance. (*Id.* ¶ 34.) Plaintiffs allege that when they inquired as to the amount and extent of support, Vicente told them that Maria Iglesias was receiving her full share and that the Partnership profits were insufficient to provide any additional money.[3] (*Id.* ¶¶ 36, 49-53.)

Plaintiffs further allege that additional Partnership profits did exist but that Vicente and Defendants Maria Regina Castro ("Maria Regina") and Pedro Jose Caraballo ("Pedro Jose") (collectively "Defendants") engaged in a secretive, multi-year scheme to steal and misappropriate both Maria Iglesias' share of the profits and the money Emilio left for Maria Iglesias and her daughters.[4] (*Id.* ¶ 37.) Specially, Plaintiffs allege that after Emilio died, Vicente and Maria Regina deposited money stolen from Maria Iglesias into

---

[2] While the Partnership's profits were the sole source of financial support for Maria Iglesias and her daughters, she was never involved in the Partnership's operations or affairs. (Compl. ¶ 19.)

[3] Plaintiffs allege that they were told on multiple occasions that the Partnership businesses only generated enough money to cover the expenses of the Partnership and the expenses of both families; to this end, Maria Iglesias was denied funds to pay for several medical procedures including a knee replacement and dental implant operations. (*Id.* ¶¶ 36, 51-53.)

[4] Defendant Maria Regina is Vicente's daughter; Defendant Pedro Jose is Maria Regina's husband. (*Id.* ¶ 3.)

3

money market accounts in the United States that were opened in the names of Vicente, Maria Regina, and Pedro Jose. (*Id*. ¶ 38.) Plaintiffs allege that between 1992 and 2001, Vicente and Maria Regina distributed the money market funds to themselves. (*Id*. ¶ 39.)

Plaintiffs also allege that Vicente issued Defendants a number of checks totaling approximately $88,000 drawn from funds belonging to Plaintiffs. (*Id*. ¶ 40.) Plaintiffs allege that Defendants knowingly deposited the stolen funds into United Sates bank accounts and spent them. (*Id*. ¶¶ 40-41.) Plaintiffs further allege that between 1995 and 2002, Vicente assisted Defendants to transfer the entire $150,000 balance of Maria Iglesias' bank account into their own joint bank account in the United States. (*Id*. ¶ 45, Ex. A.) To accomplish this, Plaintiffs allege that Defendants and Vicente opened and closed a number of bank accounts in the United States and conducted over 7,000 transactions to transfer money between them. (*Id*. ¶ 45.)

Plaintiffs became aware of the alleged misappropriation in 2015. (*Id.* ¶ 54). At that time, Plaintiffs obtained access to records and accounts related to jointly owned real estate and Maria Iglesias' share of the Partnership's profits. (*Id.* ¶ 59.) A forensic review of these records revealed the alleged theft and misappropriation described above. (*Id.* ¶ 60.)

## DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint in its entirety for failure to meet the pleading standard pursuant to Fed. R. Civ. P. 8(a)(2). Alternatively, Defendants move to dismiss counts I, II, and III under Rule 12(b)(6) for failure to state a claim upon

which relief can be granted. In the alternative, Defendants move for judgment on the pleadings for all counts pursuant to Rule 12(c).

## I. Dismissal Pursuant to Rule 8(a)(2)

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

B.   Analysis

Defendants argue that Plaintiffs' Complaint should be dismissed in its entirety because Plaintiffs fail to allege any factual content as to how and why each individual plaintiff is entitled to relief. (Doc. No. 11 ("Def.'s Memo") at 2, 4.) They argue that the allegations in Plaintiffs' Complaint are conclusory statements that fail to create a reasonable inference that Plaintiffs have a legally recognized property interest in the profits, assets, funds, or proceeds from the Partnership. (*Id.* at 6, 8.) The Court disagrees.

Plaintiffs plainly state that they are Emilio's heirs. (Compl. ¶ 22.) They also plead, "[i]n the event of Emilio's death, his share of the partnership assets and ongoing profits would go to Plaintiff Maria Luisa Iglesias (mother) to ensure her financial well-being." (Compl. ¶ 20.) Plaintiffs further allege that "between 1995 and 2002, Defendant Maria Regina and Defendant Caballo, with Vicente's assistance, gradually transferred the entire $150,000 balance of a bank account maintained in Plaintiff Maria Luisa Iglesias's (mother) name into their own joint bank account in the United States." (Compl. ¶ 44.) Based on judicial experience and common sense, the Court draws a reasonable inference that Plaintiffs have a legally recognized interest in the contested assets and finds that they have stated a plausible claim for relief as it relates to all four counts of their Complaint. *Iqbal*, 556 U.S. at 679.

Defendants further ague that even if Plaintiffs have a legally recognized interest in the Partnership assets, Count II fails because Plaintiffs fail to allege that Defendants acted

with "felonious intent to steal" as required to recover under Florida's civil theft statute.[5][6] (Def.'s Memo. at 9.) The Court is unpersuaded. "Felonious intent" is clearly implied by the nature of Plaintiffs allegations that Defendants unlawfully misappropriated and stole funds. (Compl. ¶¶ 3, 37, 38, 39, 0, 41, 44, 45, 60.)

The Court finds that Plaintiffs' Complaint includes sufficient facts to state a facially plausible claim to relief and denies Defendants' motion to dismiss pursuant to Rule 8(a)(2).

## II. Dismissal of Counts I, II, and III pursuant to Rule 12(b)(6)

### A. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits

---

[5] *See* Fla. Stat. § 812.014

[6] *See, e.g.*, *Ames v. Provident Life and Acc. Ins. Co.*, 942 F. Supp. 551, 560 (S.D. Fla. 1994), *aff'd*, 86 F.3d 1168 (11th Cir. 1996) ("In order to prove civil theft, it is necessary to show not only that the defendant obtained or endeavored to obtain plaintiff's property, but that he did so with the felonious intent to commit a crime.").

7

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**B. Analysis**

Defendants argue that even if Plaintiffs' Complaint survives dismissal pursuant to Rule 8(a)(2), Counts I-III must be dismissed for failure to state a claim upon which relief can be granted. (Def.'s Memo. at 3.) Defendants repeat their prior arguments: (1) Counts I and II must be dismissed because Plaintiffs fail to allege factual content as to how and why each individual plaintiff is entitled to relief; and (2) Count II also fails because Plaintiffs do not allege "felonious intent." (*Id.* at 17, 21.) As discussed above, the Court is not persuaded by these arguments. The Court is similarly unpersuaded by the arguments that follow.

Defendants argue that Count I fails because Minnesota's civil theft statute, Minn. Stat. § 604.14, does not apply to intangible money.[7] (*Id.* at 17, 21.) They argue that Minn. Stat. § 604.14 pertains only to "tangible property like a particular roll of coins or merchandise at a store." (*Id.* at 18.) Because the purported misappropriation of funds occurred via wire transfer and bank deposits, Defendants argue that Minn. Stat. § 604.14 does not provide relief because the money was never in a tangible form. (*Id.* at 17.)

To support their argument, Defendants rely largely on *TCI Business Capital, Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423 (Minn. Ct. App. 2017). There, the Minnesota Court of Appeals observes that the "statute appears to be intended primarily to provide for a recovery if merchandise or other property is stolen from a retail store." *TCI Business Capital*, 890 N.W.2d at 430. Defendants argue that this implies Minn. Stat. § 604.14 does not provide relief for purportedly stolen intangible funds. (Def.'s Memo. at 19.) In a discussion on what it means to steal, though, the court also states: "If the property at issue is money in an intangible form, the property is used only if a person spends the money or invests it." *Id.* at 431. Further, federal courts in Minnesota routinely permit intangible funds to support claims of civil theft. *See, e.g.*, *Waters v. Cafesjian*, 127 F. Supp. 3d 994, 995 (D. Minn. 2015) (granting summary judgment on civil theft claim arising from unlawful wire transfers). The Court is therefore

---

[7]     Defendants cite *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1076 (D. Minn. 2013) to assert that courts look to Minnesota's criminal theft statute, Minn. Stat. § 609.52, for the definition of "Property" as it pertains to civil theft. That statute defines property as "all forms of tangible property, whether real or personal, without limitation . . ." Minn. Stat. § 609.52.

9

unpersuaded by Defendants' contention that Minn. Stat. § 604.14 applies exclusively to tangible property.

Defendants argue further that even if Minn. Stat. § 604.14 applies to intangible money, Count I still fails because Plaintiffs do not plead facts showing that Defendants stole it. (Def.'s Memo. at 19.) They argue that Plaintiffs' allegation, " . . . Defendant Maria Regina and Defendant Caraballo were simultaneously engaged in a secretive, multi-year scheme to steal and misappropriate Plaintiff Maria Luisa Igelesias' (mother) share of the partnership's ongoing profits and the money Emilio had left for Plaintiff Maria Luisa Iglesias' (mother) and his daughters" is conclusory. (Def.'s Memo at 19-20; *see also* Compl. ¶ 37.) Defendants also argue that based on the facts alleged, Vicente is the only person plausibly liable to Plaintiffs; there are insufficient facts to implicate Maria Regina and/or Pedro Jose in the alleged closing or transfer of money from Plaintiffs' accounts. (Def.'s Memo. at 20.) The Court disagrees.

The Court finds that Plaintiffs' allegation that Defendants were involved in a multi-year scheme to steal and misappropriate Plaintiffs' money is properly supported by specific allegations that Defendants deposited stolen funds into accounts opened in Defendants' names, Defendants distributed those funds to themselves, and Defendants transferred $150,000 from a bank account maintained by Maria Iglesias into Defendants' own joint bank account. (*Id.* ¶¶ 38-41, 44-45.) Regardless of any role that Vicente may have played, the Court finds that there are sufficient factual allegations to plausibly establish Maria Regina's and Jose Pedro's involvement in the alleged theft and misappropriation of Plaintiff's money. (*See, e.g.*, Compl. ¶¶ 38-41, 44-45, 60.)

Defendants next argue that Counts II and III must be dismissed because the money allegedly stolen from Plaintiffs is not identifiable.[8] (Def's. Memo. at 22.) "Money is capable of identification where it is delivered at one time, by one act, and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained." *Belford Trucking Co., Inc.*, 243 So.2d at 648 (citation omitted). Defendants argue that Plaintiffs' claims fail because they do not plead facts that the money allegedly stolen was delivered at one time, by one act, and in one mass, nor that the money was a special deposit. (Def.'s Memo at 22.) They argue that because the money allegedly stolen was unsegregated and in accounts associated with the Partnership or in a bank account maintained in Maria Iglesias' name which Vicente had legal access to, it is neither capable of identification nor does it qualify as "property" under Florida's civil theft statute.[9] (*See id.* at 22-23.)

---

[8] Count II alleges Civil Theft under Fla. Stat. §§ 772.11, 812.014. (Compl. ¶¶ 68-72.) Count III alleges conversion. (Compl. ¶¶ 73-77.) Defendants argument in respect to Count III applies to conversion in Florida which requires "specific money capable of identification." *Belford Trucking Inc. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970). Defendants argue dismissal of Count III as it applies to Minnesota on other grounds discussed hereinafter.

[9] "'Property' means anything of value, and includes: (a) [r]eal property, including things growing on, affixed to, and found in land[;] (b) [t]angible or intangible personal property, including rights, privileges, interests, and claims[;] (c) [s]services." Fla. Stat. § 812.012 (2)(4). Further, "'Property of another' means property in which a person has an interest upon which another person is not privileged to infringe without consent, whether or not the other person also has an interest in the property." Fla. Stat. § 812.012 (2)(5).

Here, Plaintiffs allege that Defendants obtained checks drawn from funds belonging to Plaintiffs and identify each specific check, its amount, and the date it was drawn. (Compl. ¶ 44, Ex. A.) They also allege that Defendants stole the entirety of one specific account maintained in Maria Iglesias's name. (*Id.* ¶ 44.) "Money in a bank account can properly be the subject of a conversion action when the account and the amount are separate and ascertainable." *Republic of Haiti v. Crown Charters, Inc.*, 667 F. Supp. 839, 845 (S.D. Fla. 1987). Further, whether or not Vicente had legal authority to manage or access the accounts at issue does not insulate he or Defendants from liability if they misappropriated the funds. *See* Fla. Stat. § 812.012(2)(5); *see also Burke v. Napieracz*, 674 So.2d 756 (Fla. Dist. Ct. App. 1996); *Piccolo v. Piccolo*, Civ. No. 62463, 2016 WL 95202, at *3 (S.D. Fla. Feb. 4, 2016). The Court finds that Plaintiffs adequately pleaded that the allegedly stolen funds are capable of identification and that they fall within the ambit of "property" under Florida's civil theft statute.

Finally, Defendants argue that Count III also fails under Minnesota law because the money allegedly stolen is not tangible. (*Id.* at 23.) Relying again on *TCI Business Capital*, Defendants argue that a viable conversion claim requires money in a tangible form. (*Id* at 23-24.) There, the Minnesota Court of Appeals observed in dicta that there is no precedent on the issue of whether money in an intangible form can be converted. *TCI Business Capital*, 890 N.W.2d at 429-30. It did not resolve the issue, but held that the conversion claim failed for other reasons. *Id.* at 430.

The Minnesota Court of Appeals has nonetheless allowed other conversion claims based on electronic transfers of money. *See, e.g.*, *Neff. v. Americana Cmty. Bank*,

No. A07-0878, 2008 WL 93305 (Minn. Ct. App. Apr. 8, 2008). Minnesota federal courts also recognize that money in an intangible form can support a claim for conversion. *See, e.g.*, *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1133 (D. Minn. 2011) (finding that intangible money is capable of conversion).

The Court finds that money in an intangible form can properly support a claim for conversion. To find otherwise is misaligned with modern day e-commerce. It would insulate from liability conversion perpetrated online, using credit cards, or any other myriad of electronic payments.

Plaintiffs' factual allegations are sufficient to state a claim to relief that is plausible on its face. Assuming all facts in the complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court denies Defendants' motion to dismiss Counts I-III.

## III. Judgment on the Pleadings

### A. Legal Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) is analogous to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Both motions test the sufficiency of the complaint. When analyzing a motion for judgment on the pleadings, the court looks to the complaint as pleaded. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that supports the claim. *Allstate Financial Corp. v. U.S.*,

13

860 F. Supp. 653, 655 (D. Minn. 1994) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**B.    Analysis**

To support their motion for judgment on the pleadings for Counts I-III, Defendants incorporate by reference all of their previous arguments. (Def.'s Memo. at 26.) As discussed above, the Court is not persuaded by these arguments and denies Defendants' motion to dismiss Counts I-III for the same reasons it denies dismissal under its Rule 12(b)(6) analysis. Defendants' motion as it relates to Count IV, unjust enrichment, is discussed below.

To prevail on a claim of unjust enrichment under Minnesota law, "the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay. "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.3d 826, 838 (Minn. 2012) (citing *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 306 (Minn. 1996.)

In Florida, "[a] contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without

giving compensation." *14th & Heinberg, LLC v. Terhaar and Cronley Gen. Contractors, Inc.*, 43 So.3d 877, 880-881 (Fla. 1st DCA 2010).

Here, Plaintiffs' allege that when they granted Vicente the authority to manage Emilio's estate and their ongoing shares of the Partnership, they conferred a benefit on him which he and Defendants used to unjustly enrich themselves. (*See* Doc. No. 15 at 28-29.) Defendants argue that because Plaintiffs did not grant Defendants access to their funds, they were not conferred a benefit through which they were unjustly enriched. (*See* Doc. No. 22 at 11.) The Court is not convinced. Even if Defendants gained access indirectly, they still obtained a benefit which is not legally justifiable. "An action for unjust enrichment will lie when it has been established that one party was illegally or wrongfully enriched or in situations where it would be morally wrong for the party to retain the benefit gained at another's expense." *Holliday v. Indep. Sch. Dist. No. 709*, No. A05-1645, 2006 WL 1738168, at *4 (Minn. Ct. App. June 27, 2006) (citing *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)). If Defendants used Vicente's access to steal and misappropriate Plaintiffs' funds, it would be inequitable to allow them to retain those funds.

Similarly, the Court is unpersuaded by Defendants' argument that Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs also pleaded legal remedies. (Def.'s Memo. at 27.) In Minnesota, "[r]elief under the theory of unjust enrichment is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature." *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). While Plaintiffs will be

unable to recover under both legal and equitable remedies, they are still entitled to pursue alternative theories at this stage in the litigation. *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009). Under Florida law, the general rule that equitable remedies are not available when adequate legal remedies exist does not apply to unjust enrichment. *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714, 722 (11th Cir. 2011). Therefore, the Court finds that Plaintiffs have set forth sufficiently plausible allegations of unjust enrichment to withstand a Rule 12 challenge.

## CONCLUSION

The Court denies Defendants' motion in its entirety. While this case will move forward, it is difficult for the Court to understand how continued litigation will benefit either party. The interests of all concerned, particularly as family members, are best served through settlement.[10]

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) and for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (Doc. No. [9]) is **DENIED.**

Dated: November 16, 2018     s/Donovan W. Frank
　　　　　　　　　　　　　　DONOVAN W. FRANK
　　　　　　　　　　　　　　United States District Judge

---

[10] If the parties would like the Court's assistance in pursuing a settlement, they may contact chambers and the Court will help coordinate priority scheduling of a settlement conference with the Magistrate Judge.